**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CHRISTOPHER GALLI, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>      -against-<br><br>COGNISM INC.,<br><br>         Defendant. | Case No.: 1:25-cv-13153-BEM<br><br><br>**ORAL ARGUMENT REQUESTED** |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ....................................................................................................... 2

STANDARD OF REVIEW ....................................................................................... 4

ARGUMENT ............................................................................................................. 4

I.   PLAINTIFF LACKS STANDING UNDER COLORADO LAW ................... 4

    A.   Statutory Background Of The PTFA ........................................................ 4

    B.   Injury In Fact Is An Essential Element Of A CCPA Claim..................... 5

    C.   Plaintiff Fails To Allege A Cognizable Injury In Fact ........................... 6

II.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE PTFA................... 7

    A.   The Listing Provision Regulates Commercial Telemarketing................. 8

    B.   Cognism Does Not Sell Cell Phone Numbers In A "Directory" ........... 10

    C.   Plaintiff Fails to Sufficiently Allege that Cognism "Knowingly" Listed a
         Coloradan Cell Phone Number ............................................................... 11

III. PLAINTIFF'S CONSTRUCTION OF THE PTFA VIOLATES THE FIRST
     AMENDMENT............................................................................................. 12

    A.   The Listing Provision Is A Content-Based Restriction Subject To Strict
         Scrutiny .................................................................................................... 13

    B.   Section 304(4)(a)(I) Fails Strict Scrutiny .............................................. 14

        1.   Section 304(4)(a)(I) Is Not Narrowly Tailored As It Is
             Simultaneously Overinclusive And Underinclusive ................................ 14

        2.   Section 304(4)(a)(I) Is Poorly Tailored To Meet Any Generalized
             "Privacy" Interest ................................................................................... 18

IV.  THE LISTING PROVISION IS UNCONSTITUTIONALLY VAGUE......... 18

V.   THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES
     FOR VIOLATIONS OF THE 2005 AMENDMENT ................................... 19

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................................4, 12

*Bartnicki v. Vopper*,
  532 U.S. 514 (2001)...............................................................................................................15

*Brown v. Ent. Merchants Ass'n*,
  564 U.S. 786 (2011)...............................................................................................................15

*Burns v. City of Worcester*,
  772 F. Supp. 3d 109 (D. Mass. 2025)....................................................................................3

*City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*,
  596 U.S. 61 (2022).................................................................................................................13

*City of Chi. v. Morales*,
  527 U.S. 41 (1999).................................................................................................................19

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).................................................................................................................7

*Cox Broad. Corp. v. Cohn*,
  420 U.S. 469 (1975)...............................................................................................................16

*Crowe v. Tull*,
  126 P.3d 196 (Colo. 2006).......................................................................................................9

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
  485 U.S. 568 (1988)...............................................................................................................13

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012)...............................................................................................................19

*Fla. Star v. B.J.F.*,
  491 U.S. 524 (1989)...............................................................................................................17

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  2015 WL 4036319 (D. Colo. July 1, 2015) ...........................................................................20

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  227 F. Supp. 3d 1192 (D. Colo. 2017)....................................................................................5

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)...............................................................................................................19

*Haley v. City of Boston*,
    657 F.3d 39 (1st Cir. 2011)...................................................................................4

*Hall v. Walter*,
    969 P.2d 224 (Colo. 1998).................................................................................6, 20

*Harris v. Quinn*,
    573 U.S. 616 (2014)...........................................................................................14

*Hasan v. Educ. Comm'n for Foreign Med. Graduates*,
    2024 WL 5008882 (D. Mass. Dec. 6, 2024)........................................................4

*Holme, Roberts & Owen v. Indus. Claim Appeals Office*,
    800 P.2d 1332 (Colo. App. 1990).......................................................................8

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ...........................................................................14

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ....................................................................5

*Jackson v. Whitepages, Inc.*,
    2025 WL 2407201 (N.D. W. Va. Aug. 19, 2025)..........................................14, 16

*Katz v. Pershing, LLC*,
    672 F.3d 64 (1st Cir. 2012)..................................................................................7

*LaCourt v. Specific Media, Inc.*,
    2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .....................................................7

*LifeLink Found., Inc. v. LifeLink.com, Inc.*,
    2020 WL 6393033 (D. Colo. Nov. 2, 2020) ...................................................9, 10

*Martinez v. Nash Finch Co.*,
    2013 WL 1313899 (D. Colo. Mar. 29, 2013) .....................................................20

*McCraw v. City of Oklahoma City*
    973 F.3d 1057 (10th Cir. 2020) ..........................................................................17

*Nat'l Pharmacies, INC. v. FELICIANO-DE-MELECIO*,
    221 F.3d 235 (1st Cir. 2000).............................................................................13

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ..............................................................................17

*Packingham v. N. Carolina*,
    582 U.S. 98 (2017).............................................................................................14

*Pearson v. Geico Cas. Co.*,
　　2018 WL 2096348 (D. Colo. May 7, 2018)................................................................20

*Przekurat v. Torres*,
　　428 P.3d 512 (Colo. 2018)................................................................................11, 12

*Publius v. Boyer-Vine*,
　　237 F. Supp. 3d 997 (E.D. Cal. 2017)................................................................14

*Reed v. Town of Gilbert, Ariz.*,
　　576 U.S. 155 (2015)................................................................................13, 15

*Reno v. ACLU*,
　　521 U.S. 844 (1997)................................................................................19

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*,
　　62 P.3d 142 (Colo. 2003)................................................................................5

*Rooftop Restoration, Inc. v. Am. Fam. Mut. Ins. Co.*,
　　418 P.3d 1173 (Colo. 2018)................................................................................8, 9

*Rubin v. Coors Brewing Co.*,
　　514 U.S. 476 (1995)................................................................................17

*Sable Commc'ns of Cal., Inc. v. FCC*,
　　492 U.S. 115 (1989)................................................................................13, 14

*Smith v. California*,
　　361 U.S. 147 (1959)................................................................................16

*State ex rel. Suthers v. Mandatory Poster Agency, Inc.*,
　　260 P.3d 9 (Colo. App. 2009)................................................................................11, 12

*TransUnion LLC v. Ramirez*,
　　594 U.S. 413 (2021)................................................................................7

*U.S. W., Inc. v. FCC*,
　　182 F.3d 1224 (10th Cir. 1999)................................................................................18

*URI Student Senate v. Town of Narragansett*,
　　631 F.3d 1 (1st Cir. 2011)................................................................................18

*Victory Processing, LLC v. Michael*,
　　333 F. Supp. 3d 1263 (D. Wyo. 2018)................................................................................15

**STATUTES**

C.R.S. § 6-1-101................................................................................6

C.R.S. § 6-1-106(1)(a) ...............................................................................................10

C.R.S. § 6-1-113 ................................................................................................6, 19, 20

C.R.S. § 6-1-301 ................................................................................................ *passim*

C.R.S. § 6-1-303 .......................................................................................................15

C.R.S. § 6-1-304(1) ...................................................................................................15

C.R.S. § 6-1-304(3)(a)(I) ...........................................................................................18

C.R.S. § 6-1-304(4) .................................................................................................5, 8

C.R.S. § 6-1-304(4)(a)(I) .............................................................................................5

C.R.S. § 6-1-305 ....................................................................................................5, 19

C.R.S. § 6-1-901 .......................................................................................................10

C.R.S. § 6-1-903(4) ...................................................................................................10

C.R.S. § 6-1-1303 .....................................................................................................18

C.R.S. § 24-72-202(6)(a) ...........................................................................................17

4 Colo. Code Regs. § 723-2:2891 ..............................................................................10

Colorado Consumer Protection Act .............................................................. *passim*

Prevention of Telemarketing Fraud Act ........................................................ *passim*

## **PRELIMINARY STATEMENT**

Plaintiff Christopher Galli, a Colorado resident, filed this putative class action in Massachusetts state court against Cognism Inc. ("Cognism") under Colorado's Prevention of Telemarketing Fraud Act ("PTFA"), which is part of the Colorado Consumer Protection Act (the "CCPA"). The case invokes a 2005 amendment to the PTFA—which no Colorado court has ever construed—that prohibits "knowingly" listing cell phone numbers in a "directory" for a "commercial purpose." This lawsuit is one of a slew of near-identical cases that Plaintiff's counsel has filed across the nation invoking the same Colorado statute.

As its title suggests, the PTFA seeks to protect consumers from telemarketing fraud. Cognism, however, is an online sales intelligence platform that provides, among other services, business-to-business ("B2B") contact data to companies looking to improve their sales and marketing efforts. It is in no way a consumer-targeted telemarketing business or platform, which is what the Colorado statute contemplates. It is no surprise, then, that attempting to wedge Cognism's services into a telemarketing fraud statute distorts the very purpose for which the statute was enacted. The amended complaint, just as the original, must be dismissed for multiple reasons—none of which is curable by further amendment:

*First,* Plaintiff fails to allege any actual injury, a required element for standing under the CCPA. Plaintiff's request for statutory damages does not constitute an injury-in-fact, and his claim that his cellphone number has some "inherent monetary" or "economic" value is insufficient as a matter of law to establish injury. So too is Plaintiff's speculative claim that Cognism's services could elevate his risk in the future of being exposed to "stalking, harassment, scams, identity theft, and unwanted telemarketing," Am. Compl. ¶ 48, which also does not rise to the level of actual injury.

*Second,* Plaintiff fails to state a claim under the PTFA. The PTFA requires Plaintiff to allege, among other things, that Cognism "knowingly" lists cell phone numbers in a "directory" for a "commercial purpose"—that is, for the purpose of consumer-targeted commercial telemarketing. Plaintiff fails to allege such facts—and cannot allege such facts—as Cognism does not publish such a directory, nor does it engage in such telemarketing activities. Plaintiff further fails to allege sufficient facts to establish that Cognism listed Plaintiff's phone number ***knowing*** that it was a Coloradan cell phone number, for the statutory interpretation of "knowing" in Colorado requires actual knowledge.

*Third,* Plaintiff's interpretation of the PTFA renders it unconstitutional, as the statute would discriminate against speech by subject matter by prohibiting the publication of cell phone numbers, but allowing the same information to be published through other means—including by and from the government. Such content-based regulation fails strict scrutiny and violates the First Amendment.

*Fourth,* the statute as interpreted by Plaintiff would be unconstitutionally vague as it leaves regulated parties guessing at the meaning of undefined key terms under threat of steep statutory penalties—causing reasonable entities to self-censor, thereby creating an "obvious chilling effect" that the void for vagueness doctrine is intended to guard against.

*Fifth and finally,* Plaintiff seeks class-wide statutory damages that are unavailable as a matter of law. Because the PTFA provides statutory damages only for individual claims, Plaintiff's request for class-wide statutory damages should be dismissed.

## BACKGROUND

Cognism is a B2B sales intelligence platform that provides a host of services to assist companies in improving their sales and marketing efforts—including (1) "Sales Companion," a

tool that acts as a personalized sales assistant/advisor  to company sales teams by guiding them to quality accounts based on target market and persona; (2) "Buyer Signals," which are personalized signals that can track key workforce trends and funding rounds in specific industries; (3) "Data-as-service," which provides access to verified B2B data that is processed in accordance with the GDPR and CCPA[1] and customizable for integration and strategy; and (4) "Integrations," which are options for revenue teams to connect existing tech stacks with Cognism's service to build more efficient workflows.[2] Cognism's services thus make clear that its customer base consists of companies that sell products and services to other businesses, *not consumers*.[3]

Plaintiff Christopher Galli is a resident and citizen of Centennial, Colorado. *Id.* ¶ 10. The amended complaint provides little detail on Plaintiff and sets forth no allegations at all of how Cognism's alleged actions affected him, only alleging that "Plaintiff's cellular telephone number was listed by Defendant," and that "Defendant never requested – and Plaintiff never provided – affirmative consent, through written, oral, or electronic means, to such listing." *Id.* The amended complaint includes the same purported screenshots taken of Cognism's platform as the original

---

[1] GDPR is a reference to the General Data Protection Regulation in the EU; CCPA here stands for the California Consumer Privacy Act.

[2] *See Cognism: Product*, https://www.cognism.com/ (last accessed Feb. 9, 2026). The Court may consider documents incorporated by reference in the complaint and documents whose authenticity are not disputed by the parties. *Burns v. City of Worcester*, 772 F. Supp. 3d 109, 123 n.1 (D. Mass. 2025) ("The Court notes that while a motion to dismiss generally requires consideration of only the complaint and documents explicitly incorporated therein, courts may also consider 'documents the authenticity of which are not disputed by the parties,' 'official public records,' or 'documents sufficiently referred to in the complaint.'").

[3] *See Cognism: FAQ*, https://www.cognism.com/faq (last accessed Feb. 9, 2026). Indeed, the complaint itself defines Cognism as a platform that "facilitate[s] identifying and acquiring potential business-to-business leads" by "compil[ing] and organiz[ing] . . . contact details, business categories, industry, size, location, and other relevant data." Am. Compl. ¶ 16.

complaint, none of them relating in any way to Plaintiff or showing that Cognism ever listed a cell phone number associated with him.

<strong><u>STANDARD OF REVIEW</u></strong>

To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to state a claim for relief that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is not plausible unless the factual allegations allow a "reasonable inference" that the defendant is liable for the conduct alleged. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief." *Id.* at 679 (cleaned up). In the First Circuit, Courts conduct a two-step, context-specific inquiry to determine whether a complaint has sufficiently stated a claim upon which relief can be granted: "First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Second, the Court must determine whether the factual allegations present a reasonable inference that the defendant is liable for the conduct alleged." *Hasan v. Educ. Comm'n for Foreign Med. Graduates*, 2024 WL 5008882, at *2 (D. Mass. Dec. 6, 2024) (cleaned up) (citing *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

<strong><u>ARGUMENT</u></strong>

**I.     PLAINTIFF LACKS STANDING UNDER COLORADO LAW**

**A.     Statutory Background Of The PTFA**

The Colorado legislature enacted the Prevention of Telemarketing Fraud Act (the "PTFA") in 1993 as part of the Colorado Consumer Protection Act (the "CCPA"), to protect consumers from "fraudulent and deceptive commercial telephone solicitation [that] has caused substantial

-4-

financial losses to thousands of consumers." C.R.S. § 6-1-301. The instant action is brought

pursuant to a 2005 amendment to the PTFA, § 6-1-304(4)(a)(I) (the "Listing Provision"), which

provides that:

> (a) On or after September 1, 2005, a person commits an unlawful telemarketing practice if the person knowingly . . . [l]ists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]
> . . .
> (b) This subsection (4) shall not apply to a commercial telephone solicitation that is in relation to a preexisting commercial relationship between the person and the person who owns the cellular telephone.

Plaintiff seeks statutory damages under § 6-1-305(1)(c), which provides that:

> (c) [a] person who engages in any unlawful telemarketing practice as defined in section 6-1-304(4) shall be liable in a private civil action to the owner of the cellular telephone for consequential damages, court costs, attorney fees, and a penalty in the amount of at least three hundred dollars and not more than five hundred dollars for a first offense and at least five hundred dollars and not more than one thousand dollars for a second or subsequent offense.

### B.    Injury In Fact Is An Essential Element Of A CCPA Claim

The Colorado Supreme Court has made clear that "[t]o prove a private cause of action

under the CCPA, a plaintiff must show… that the plaintiff suffered injury in fact to a legally

protected interest; and… the challenged practice caused the plaintiff's injury." *Rhino Linings USA,*

*Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (citation omitted).

Furthermore, a per se violation of the statute is insufficient to show an injury in fact. *See Friedman*

*v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1204 (D. Colo. 2017) ("Plaintiffs cannot

merely rely on a per se violation of the [CCPA] for causation; instead, they must show an actual

injury. Indeed, the CCPA itself states that a plaintiff must establish an 'injur[y] as a result of [an

alleged] deceptive practice'") (internal citations omitted); *see also In re New Motor Vehicles*

*Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 179-80 (D. Me. 2004) (dismissing CCPA

claim for failure to allege "deception that caused the plaintiffs' injury" as required by the Colorado

Supreme Court in *Rhino Linings*). *Hall v. Walter* is instructive on this point. There, plaintiff brought a claim for deceptive trade practices under the CCPA §§ 6-1-101 to -511, 2 C.R.S. (1998). While the Court noted that the CCPA allows "any person" to seek recovery of statutory penalties under that provision, it held that a mere violation of the CCPA, in the absence of actual injury, is insufficient to state a claim. *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998) ("Read literally, the term 'any person' would permit a claim for relief under section 6-1-113 based exclusively on the defendant's alleged deceptive trade practices regardless of whether the plaintiff suffered any injury. This reading would indeed be consistent with a liberal construction of the statute; however, it would violate our fundamental standing requirements.").

### C.    Plaintiff Fails To Allege A Cognizable Injury In Fact

Here, Plaintiff fails to allege any injury in fact. Galli does not even allege that his cell phone number was actually viewed through the Cognism platform, much less that he received any unwanted or fraudulent phone calls, was subject to telemarketing, or that any phone calls caused him the slightest harm. Rather, Plaintiff merely alleges his cell phone number was "listed" within Cognism's database, and that this listing "came at the expense of Class Members' PTFA privacy rights," (1) "depriv[ing] Class Members of the real, quantifiable value of such data," and (2) "expos[ing] Class Members to elevated risks of stalking, harassment, scams, identity theft, and unwanted telemarketing." Am. Compl. ¶ 48. Such grounds as alleged are insufficient to constitute an injury in fact, because they are conclusory and hypothetical insofar as they do not demonstrate *how* Plaintiff was deprived of the value of his personal data, or *how* he was injured by Cognism's practices.[4] Such statements cannot as a matter of law constitute injury in fact. *See, e.g., LaCourt*

---

[4] The amended complaint adds a new allegation relating to the dangers of falling prey to "SIM swappers – hackers who take over a target's phone in order to receive their calls and texts, which in turn can let them break into all manner of accounts." Am. Compl. ¶ 31. The new allegation

(continued...)

*v. Specific Media, Inc.*, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011) (dismissing complaint where plaintiffs "d[id] not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party"); *Katz v. Pershing, LLC*, 672 F.3d 64, 79-80 (1st Cir. 2012) (rejecting plaintiff's theory of injury based on the "assertion that the defendant's failure to adhere to privacy regulations increases her risk of harms associated with the loss of her data" because "[h]er cause of action rests entirely on the hypothesis that at some point an unauthorized, as-yet unidentified, third party might access her data and then attempt to purloin her identity"). *See also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410-14 (2013) (finding "respondents' theory of standing, which relie[d] on a highly attenuated chain of possibilities" failed to "satisfy the requirement that threatened injury must be certainly impending"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) ("in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm").

As a result, Plaintiff has failed to sufficiently allege a cognizable injury in fact, thereby depriving him of standing under the CCPA, and requiring that his claim be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE PTFA

Beyond the deficiencies in Plaintiff's allegations set forth above, Plaintiff also fails to state a claim under the PTFA because Cognism's services do not fall within the scope of the statute.

The Listing Provision requires Plaintiff to allege that Cognism (1) "knowingly" (2) lists (3) a cell phone number, (4) assigned to a telephone he owns, (5) "in a directory," (6) "for a

---

merely serves as another example of Plaintiff's contention that Cognism's practices purportedly expose Class Members to an "elevated risk" of scams—which is insufficient to establish injury in fact.

commercial purpose," (7) without "affirmative consent[] through written, oral, or electronic means," and (8) there is no "preexisting commercial relationship" between Cognism and Plaintiff. *See* C.R.S. § 6-1-304(4). As explained below, Cognism's service does not "knowingly" sell a "directory" of cell phone numbers "for a commercial purpose" under the Listing Provision.

### A.    The Listing Provision Regulates Commercial Telemarketing

The statutory phrase "for a commercial purpose" must, at minimum, be construed to apply only to the purpose of consumer-targeted commercial telemarketing, which Cognism does not engage in or facilitate as a business-to-business ("B2B") platform.

Here, the PTFA was passed under the Colorado ***Consumer*** Protection Act and is intended to apply to "regulation of the commercial use of telephones" in the context of ***consumer*** marketing. *Id.* § 6-1-301; *see Holme, Roberts & Owen v. Indus. Claim Appeals Office*, 800 P.2d 1332, 1334 (Colo. App. 1990) (Colorado courts' "primary task in construing a [state] statute is to ascertain and implement the intent of the General Assembly . . .  Statutes susceptible to more than one interpretation must be construed in light of the apparent legislative intent and purpose."). The PTFA's focus on consumers is not only made clear by its passage under the CCPA, which by its name addresses consumer protection, but the language of the statute itself, which consistently uses the word "commercial" to describe telephone solicitations or telephone sellers targeting consumers. *See* C.R.S. § 6-1-301 ("the general assembly finds that the widespread practice of fraudulent and deceptive ***commercial*** telephone solicitation has caused substantial financial losses to thousands of ***consumers***, and, particularly, elderly, homebound, and ***otherwise vulnerable consumers***[.]) (emphasis added). The use of "commercial" in "directory for a commercial purpose," then, should be construed to mean consumer-targeted commercial telephone solicitations, as it is the only interpretation that tracks the purpose of the PTFA. *See Rooftop Restoration, Inc. v. Am. Fam. Mut. Ins. Co.*, 418 P.3d 1173, 1176 (Colo. 2018) ("We aim to ascribe

the same meaning to words or phrases used throughout a statutory scheme[.]”); *Crowe v. Tull*, 126 P.3d 196, 201 (Colo. 2006) (“In determining whether the CCPA applies . . . Our goal is to give effect to the intent of the General Assembly and we avoid constructions that defeat the legislature's intent. The intention of the legislature prevails over a literal interpretation of the statute’s plain and ordinary meaning that would produce an absurd result.”).[5]

Crucially, as a B2B intelligence platform, Cognism does not engage in or facilitate *consumer*-targeted marketing, nor does the amended complaint allege as much. Indeed, the complaint itself alleges that Cognism “provides an online business-to-business” platform that “facilitate[s] identifying and acquiring potential ***business-to-business*** leads[.]” Am. Compl. ¶ 16 (emphasis added). As such, Cognism’s customers are businesses, and those business customers may use Cognism’s services to connect them to other potential ***business*** partners. This is separate and in clear contrast from businesses that target consumer marketing. *See, e.g., LifeLink Found., Inc. v. LifeLink.com, Inc.*, 2020 WL 6393033, at *2 (D. Colo. Nov. 2, 2020) (highlighting distinct nature of B2B businesses in denying injunctive relief in trademark dispute over identical business

---

[5] It is also worth noting that Plaintiff’s interpretation of the statute’s purpose as protecting *privacy*, rather than regulating telemarketing, is not supported by his allegations either. Plaintiff explicitly argues that the Listing Provision’s passing in 2005 was intended to protect *personal*, *private* telephone numbers. *See* Am. Compl. ¶ 2. Yet Plaintiff fails to even allege that the “cellular” or “mobile” numbers allegedly “listed” by Cognism were indeed personal and private, rather than business numbers. Insofar as Plaintiff’s reading of the Listing Provision rests on an interpretation of the term “cellular telephone,” or indeed *any* mobile device, as a presumptively “personal” device rather than business related, such a broad interpretation should be rejected. That interpretation relies on antiquated assumptions about cell phone use that are no longer accurate and its scope far exceeds the bounds of the Colorado legislature’s purpose for passing the Listing Provision. Today, enforcing the Listing Provision according to an interpretation that assumes *all* mobile devices as personal, not business, is nonsensical, given that large portions of cellular numbers are business numbers, and many individuals use their mobile numbers for a mix of personal and business purposes. Therefore, to state a claim under Plaintiff’s interpretation, he must at minimum allege that the mobile numbers allegedly provided through Cognism’s service are indeed personal, and not business numbers. Plaintiff has not done so.

marks); *id*. ("Plaintiff has not shown that confusion is likely to occur despite ***the vast differences between the parties' businesses*** [. . .] Defendant is focused on business-to-business marketing and ***does not engage in any consumer marketing***") (emphasis added). Plaintiff's attempt to fit his claim under a consumer protection statute is therefore inappropriate and inapplicable.

Moreover, reading the Listing Provision broadly would lead to an absurd result when applied alongside Colorado's No Call Law (C.R.S. §§ 6-1-901 *et seq.*) and its implementing regulations. Colorado allows "Conforming List Brokers" to "provide[] lists for the purpose of telephone solicitation, if such lists shall have removed, at a minimum of every thirty days, any phone numbers that are included on the Colorado no-call list." C.R.S. § 6-1-903(4); 4 Colo. Code Regs. § 723-2:2891. A broad reading of the Listing Provision would permit companies to provide telemarketing lists so long as they check against the no-call list,[6] but would prohibit listing the same numbers elsewhere for any commercial purpose, even with no connection to telemarketing. The result is to privilege telemarketing—precisely the opposite of what the Legislature intended. Thus, the Court should read the Listing Provision as limited to consumer-targeted commercial telephone solicitation. Because Plaintiff does not contend Cognism engages in such activity, Cognism is outside the PTFA's purview.

**B.        Cognism Does Not Sell Cell Phone Numbers In A "Directory"**

The PTFA does not define "directory," nor has a Colorado court interpreted its meaning under the Listing Provision. But here, its plain meaning—particularly when construed in light of the statutory background and purpose of the PTFA—does not support Plaintiff's attempt to fit his claim under the statute.

---

[6] *See* C.R.S. § 6-1-106(1)(a) (exempting "[c]onduct in compliance with … a statute," including from the PTFA).

A "directory" means "an alphabetical or classified list (as of names and addresses)" or "[a] book containing an alphabetical or classified listing of names, addresses, and other data, such as telephone numbers, of specific persons, groups, or firms." [7] The Listing Provision's plain terms contemplate something more akin to a traditional telephone book (even if analogized to the Internet)—not a search tool with layers of affirmative steps a user must take to (1) request that Cognism query its database for a phone number and then (2) reveal only that number. Plaintiff alleges that B2B platforms like Cognism's, which "facilitate identifying and acquiring potential business-to-business leads," Am. Compl. ¶ 16, should fall under the Listing Provision's scope of a "directory." But no Colorado court has endorsed plaintiffs' attempt to equate a *consumer* "directory"—such as a phone book—with B2B intelligence platforms like Cognism's. Nor should it in situations like here, where such an interpretation is inconsistent with both the plain meaning of the terms and the statutory context of the PTFA.

### C.    Plaintiff Fails to Sufficiently Allege that Cognism "Knowingly" Listed a Coloradan Cell Phone Number

Lastly, Plaintiff fails to state a claim under the statute because the amended complaint does not sufficiently allege that Cognism listed Plaintiff's phone number *knowing* that it was a Coloradan cell phone number. Colorado courts "[a]ffording 'knowingly' its 'plain and ordinary meaning'" have consistently held that the term requires actual knowledge. *See, e.g.*, *Przekurat v. Torres*, 428 P.3d 512, 516 (Colo. 2018) (citation omitted); *see also State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 14 (Colo. App. 2009) (concluding that "'knowingly,' as used in the CCPA, requires actual knowledge."). Despite this requirement, the amended

---

[7]      *Directory*,      Merriam-Website      Dictionary,      https://www.merriam-webster.com/dictionary/directory (last accessed Feb. 9, 2026); The American Heritage Dictionary of the English Language, https://ahdictionary.com/word/search.html?q=directory (last accessed Feb. 9, 2026).

complaint only includes passing references to Cognism's knowledge that are wholly conclusory. *See* Am. Compl. ¶¶ 22, 43. Such threadbare recitations of the PTFA's "knowingly" requirement are insufficient to state a claim under the statute. *See Iqbal*, 556 U.S. at 678. In fact, the amended complaint contains no allegations that Cognism had actual knowledge that a certain telephone number was a Coloradan number—as opposed to an out-of-state number or a number belonging to an individual residing in another state—or that Cognism had actual knowledge that it was a ***cell phone*** number at all. Nor would Plaintiff be able to allege so, as Cognism is in the business of generating B2B leads, *see supra* at 10, not determining whether a particular phone number is actually Colorado-based or tied to any physical address or location.

For these reasons alone, the complaint should be dismissed for failure to state a claim.

## III.   PLAINTIFF'S CONSTRUCTION OF THE PTFA VIOLATES THE FIRST AMENDMENT

A construction of the PTFA that sweeps in Cognism's conduct would result in a facial violation of the First Amendment. Plaintiff posits that any display of a cell phone number without affirmative consent in a "for-profit" directory violates the Listing Provision, Am. Compl. ¶ 6, but as discussed below, the First Amendment protects dissemination of truthful, publicly available information—including business contact details. Thus, Plaintiff's construction of the PTFA does not withstand constitutional scrutiny.

Courts routinely construe statutes to avoid constitutional difficulties where a plausible alternative reading exists. Here, construing the statute to exclude Cognism's service would avoid the constitutional difficulties in this case—particularly given there is no contrary legislative intent.[8]

---

[8] The complaint cites no legislative record supporting contrary legislative intent. The PTFA's original 1993 statement of purpose (Am. Compl. ¶ 4) never mentions cellular devices or directories, so Plaintiff attempts to anchor its reading of the Listing Provision's purpose by citing a 2005 news article quoting then-State Rep. Mark Cloer expressing personal concerns that

(continued...)

*See e.g., Nat'l Pharmacies, INC. v. FELICIANO-DE-MELECIO*, 221 F.3d 235, 241-42 (1st Cir. 2000) ("[W]e note that the district court was correct in its endeavor to construe the [state's] statutory provisions in a way that would avoid constitutional difficulties. . . . [T]he federal courts are [] instructed to render interpretations of state law by using the same methods that the state court would use, including the principle that statutes should ordinarily be given a constitutional interpretation where fairly possible.") (cleaned up); *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (similar).

### A.    The Listing Provision Is A Content-Based Restriction Subject To Strict Scrutiny

A restriction is content-based if it "target[s] speech based on its communicative content." *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)) (a restriction is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed"). Content-based restrictions are "presumptively unconstitutional," and may be upheld only if they pass muster under strict scrutiny—that is, if they are "the least restrictive means to further [a compelling government] interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989).

Here, Section 304(4)(a)(I) is content-based, because it prohibits the listing of only certain information—namely, cell phone numbers—while permitting publication of other professional contact information; in other words, Section 304(4)(a)(I) is a content-based restriction because it necessarily "turns on *what* [a defendant] says." *Jackson v. Whitepages, Inc.*, 2025 WL 2407201, at *8 (N.D. W. Va. Aug. 19, 2025). Courts have uniformly found such restrictions to be content-based. *See, e.g., IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (prohibition on

---

unsolicited calls to cell phones impose a per-call financial cost on recipients. *Id.* ¶ 2. But those comments are not part of the legislative record.

"dissemination of one type of speech: 'date of birth or age information'" "restrict[ed] speech because of its content") (citations omitted); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1013 (E.D. Cal. 2017) (law "content-based on its face" because it applied only if "(1) the speech contain[ed] a home address and/or phone number of (2) a covered official"). As such, strict scrutiny must be applied to Section 304(4)(a)(I).[9]

### B.    Section 304(4)(a)(I) Fails Strict Scrutiny

As a content-based restriction on non-commercial speech, the Listing Provision is unconstitutional unless it serves a compelling state interest and is narrowly tailored to that interest. *Sable Commc'ns*, 492 U.S. at 126. Here, Section 304(4)(a)(I) is far from the rare restriction that can meet this standard.

### 1.    Section 304(4)(a)(I) Is Not Narrowly Tailored As It Is Simultaneously Overinclusive And Underinclusive

In enacting the PTFA, Colorado was concerned with "regulat[ing] [] the commercial use of telephones" to stop "fraudulent and deceptive commercial telephone solicitation" and identity theft. C.R.S. § 6-1-301. Most of the PTFA's provisions advance this interest by restricting the conduct or regulating the speech of telephone solicitors, including by requiring them, for example, to register with the state, *id.* § 6-1-303(1), and to refrain from misrepresenting that a person has "won a contest," *id.* § 6-1-304(1)(e). The statute also implements consumer protection measures

---

[9] Section 304(4)(a)(I) applies to speech for a "commercial purpose," but that does not make the regulated speech "commercial speech" subject to the more lenient intermediate scrutiny, for the Supreme Court has consistently defined "commercial speech" as "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (citations omitted). Further, even if this Court were to conclude that Section 304(4)(a)(I) is subject to intermediate scrutiny, the result is the same, for Plaintiff must still show under intermediate scrutiny that the provision is "narrowly tailored to serve a significant governmental interest," which it cannot. *Packingham v. N. Carolina*, 582 U.S. 98, 105-06 (2017) (citation omitted). *See infra* at Section III.B.2.

for purchases made by telephone. *See, e.g.*, *id*. § 6-1-304(1)(b) (three-day cancellation rights for telephonic purchases). These are calibrated restrictions aimed at specific fraudulent telemarketing conduct. But Section 304(4)(a)(I) is different in both kind and degree: it imposes a ***total*** ban on an entire category of speech based on the speculative conjecture that cell phone numbers ***might*** be used to make fraudulent or predatory telemarketing calls. As the Supreme Court has made clear, the mere possibility that third parties will misuse the contents of speech does not justify a blanket prohibition of that speech. *See Bartnicki v. Vopper*, 532 U.S. 514, 529-30 (2001) ("[I]t would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party."); *see also Victory Processing, LLC v. Michael*, 333 F. Supp. 3d 1263, 1271-72 (D. Wyo. 2018) (statute that "completely prohibits political speech" in effort to "prevent unwanted calls from disturbing residents of Wyoming" is unconstitutional).

A law is not narrowly tailored if it is "seriously underinclusive" or "overinclusive." *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 805 (2011). And where a law regulates one category of speech but allows "unlimited numbers of other types" that cause the same harm, *Reed*, 576 U.S. at 172, it is "wildly underinclusive."

By any measure, Section 304(4)(a)(I) is overinclusive. Because the provision restricts speech of any "person" who lists the cell phone number of another "person," in contrast to the PTFA's other more targeted restrictions on "commercial telephone seller[s]," its coverage appears virtually boundless. An enormous range of speech could qualify as listing a cell phone number in a "directory"—*i.e.*, in any "alphabetical or classified list."[10] Moreover, Section 304(4)(a)(I) is so

---

[10] *Directory*, Merriam-Website Dictionary, https://www.merriam-webster.com/dictionary/directory, (last accessed Feb. 9, 2026).

broad that it essentially penalizes listing information already in the public domain. The Supreme Court has long held that "States may not impose sanctions on the publication of truthful information contained in official [government] records open to public inspection." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975). Section 304(4)(a)(I) does just that, as public records may serve as a source of cell phone numbers in many directories that serve a public benefit entirely unrelated to preventing telemarketing fraud, such as databases used to prevent fraud, or databases that help advocacy groups or campaigns connect with voters. The over-inclusiveness of Section 304(4)(a)(I), coupled with potential exposure to significant liability under the statute, will inevitably chill speech that does not fall within the law's purview. *See Smith v. California*, 361 U.S. 147, 153-54 (1959) ("self-censorship" due to chilling is a First Amendment problem); *Jackson*, 2025 WL 2407201, at *19 (First Amendment problem when "speakers may be chilled from speaking on the topic at all").

Simultaneously, Section 304(4)(a)(I) is also underinclusive, presenting an additional tailoring problem. Under the Listing Provision, anyone can list cell phone numbers outside of the context of a "directory," or even in a directory for a non-commercial purpose. A cell phone number is no less available to potential fraudsters if it is posted alone (*i.e.*, not in a list) on a non- "directory" website, or if it is published in a school or religious institution's directory rather than a commercial directory. Yet the statute allows listing and disclosing cell phone numbers in such "non-commercial" contexts, while banning identical disclosure in "commercial" directories.[11]

---

[11] This "discrepancy" between activities posing ostensibly the same risk is similar to one the Tenth Circuit confronted in *McCraw v. City of Oklahoma City*, where the court found unconstitutional a law that criminalized standing or sitting on traffic medians but exempted nonprofit beautification efforts. 973 F.3d 1057, 1077 (10th Cir. 2020). There, as here, the differential treatment showed that the law was not tailored to the harm it purportedly targeted.

The sheer breadth of disclosures that remain permissible under Section 304(4)(a)(I) ensures that "[t]here is little chance that [it] can directly and materially advance its aim[s]" of preventing telemarketing fraud. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 489 (1995). Even apart from non-commercial disclosures by private parties, the government engages in exactly the disclosure Section 304(4)(a)(I) prohibits for others. For example, the Secretary of State may disclose cell phone numbers provided by Colorado voters to "any member of the public" unless voters complete a confidentiality form. Similarly, the Colorado Supreme Court manages a directory of Colorado attorneys, including phone numbers that may include cell phone numbers.[12] The net effect is to permit disclosures of cell phone numbers by the government, but bar the same speech by private actors, even when the former is the source of the latter. This result is a paradigmatic example of under-inclusiveness: "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Fla. Star v. B.J.F.*, 491 U.S. 524, 535 (1989). Courts accordingly have struck down attempts to penalize such disclosures. *See, e.g., Ostergren v. Cuccinelli*, 615 F.3d 263, 280 (4th Cir. 2010) (rejecting effort to penalize discloser where "the government has failed to police itself") (quoting *Fla. Star*, 491 U.S. at 538). In short, attempting to regulate telemarketing fraud through restrictions that necessarily impose enormous statutory penalties on innocent conduct, thereby chilling vast swaths of socially beneficial speech—all without having any appreciable effect on fraudsters' ability to misappropriate phone numbers—is not tolerated under the First Amendment.

---

[12] *See See Colo. Sec'y of State*, Public Voter Data and Information Requests FAQs, https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html (last accessed Dec. 10, 2025); C.R.S. § 24-72-202(6)(a); *Off. of Att'y Regul. Couns.*, Attorney/LLP Search & Disciplinary History https://www.coloradolegalregulation.com/attorney-search (last accessed Dec. 9, 2025).

### 2. Section 304(4)(a)(I) Is Poorly Tailored To Meet Any Generalized "Privacy" Interest

Finally, Plaintiff asserts that Section 304(4)(a)(I) aims to protect a generalized interest in "privacy." *See, e.g.*, Am. Compl. ¶ 9. As an initial matter, the statute does not reference any such interest. *See* C.R.S. § 6-1-301; *URI Student Senate v. Town of Narragansett*, 631 F.3d 1, 14 (1st Cir. 2011) ("The Supreme Court has looked to an ordinance's preamble to ascertain what activity it was intended to prohibit."). Further, a party may not "merely assert[] a broad interest in privacy," and "must specify the particular notion of privacy and [the] interest served" to qualify as even a substantial interest. *U.S. W., Inc. v. FCC*, 182 F.3d 1224, 1234-35 (10th Cir. 1999). Here, Plaintiff has identified "restrict[ing] access" and preventing "misappropriation" of cell phone numbers as the privacy interests Section 304(4)(a)(I) purportedly advances. *See* Am. Compl. ¶¶ 3, 4. But those privacy goals merely re-state the fraud prevention rationale. Penalizing disclosure of an entire category of speech cannot be the least restrictive means of preventing a small number of wrongdoers from "misappropriating" that speech after it has been disclosed. Further, ample alternative means of promoting privacy exist, including the Colorado Privacy Act, C.R.S. § 6-1-1303 *et seq.*, ("CPA"), which enables consumers to opt out of certain disclosures of non-public information.

Because Section 304(3)(a)(I) is a content-based restriction on non-commercial speech that does not meet strict scrutiny, the Court should dismiss the present action.

## IV. THE LISTING PROVISION IS UNCONSTITUTIONALLY VAGUE

Section 304(4)(a)(I) is also unenforceable because it leaves regulated parties guessing at the meaning of key terms under threat of steep statutory penalties. Statutes must be written clearly enough to "enable the ordinary citizen to conform his or her conduct to the law." *City of Chi. v. Morales*, 527 U.S. 41, 58 (1999). A law is void for vagueness if it fails to provide sufficient notice

of the conduct prohibited, such that "regulated parties [do not] know what is required of them," or is otherwise susceptible to arbitrary enforcement. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

Section 304(4)(a)(I) is littered with undefined terms that make it difficult for persons or entities to know what is required. For example, it is unclear what it means to list a telephone number in a "directory" under the statute. *See supra* at Section II.B. The problem compounds when evaluating whether a listing is "for a commercial purpose." *See supra* at Section II.A. Any potential speaker is left guessing whether they are potentially subject to statutory damages (plus penalties and fees) if they guess wrong. This will cause reasonable entities to self-censor, creating an "obvious chilling effect" that the void for vagueness doctrine is intended to guard against. *Reno v. ACLU*, 521 U.S. 844, 871-72 (1997); *see Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

## V.    THE PTFA DOES NOT ALLOW CLASS-WIDE STATUTORY DAMAGES FOR VIOLATIONS OF THE 2005 AMENDMENT

Lastly, even if the Court were to conclude that Plaintiff has stated a viable PTFA claim—he has not—the Court should nevertheless dismiss Plaintiff's demand for class-wide statutory damages because the Colorado legislature allows statutory damages only for individual claims brought under the PTFA. When the Listing Provision was enacted in 2005, Section 6-1-305(1)(c) permitted a plaintiff to recover limited statutory damages of $300-$500 for a first offense. Critically, this section provides only for ***individual*** statutory damages and says nothing about class relief. At the time § 6-1-305(c) was enacted, the CCPA—of which the PTFA is a part—authorized damages recovery only in individual actions. *Id.* § 6-1-113(2)(b) (2005) ("Except in a class action [or certain deceptive trade practices suits] and notwithstanding any other law," any person in "a

private civil action" may recover the greater of "actual damages," "[f]ive hundred dollars," or, in cases of "bad faith," three times actual damages.) (emphasis added)[13].

The CCPA was amended in 2022 to allow actual damages in class actions, but it notably did not authorize statutory damages for class relief: "In a case certified as a class action, a successful plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs." *Id*. § 6-1-113(2.9) (2022). The amendment included multiple statutory damages remedies provisions in the PTFA but omitted these remedies from class action recovery. Read together, these provisions reflect a clear legislative judgment: class actions may seek actual damages but not aggregate statutory penalties under the PTFA. *See, e.g., Pearson v. Geico Cas. Co.*, 2018 WL 2096348, at *10 (D. Colo. May 7, 2018), *report and recommendation adopted in relevant part*, 2018 WL 4368667 (D. Colo. June 3, 2018) (following "the opinions of the majority of courts interpreting the CCPA and finding that 'the CCPA creates no statutory liability for a defendant in a private class action'") (collecting authorities) (citation omitted).

As a result, Plaintiff may pursue—at most—individual statutory damages of between $300-$500. But the statute does not support class-wide recovery of those damages. Accordingly, the Court should dismiss the request for class-wide statutory damages under the PTFA.

**CONCLUSION**

For the reasons stated above, Cognism's motion to dismiss should be granted.

---

[13] The CCPA was largely modeled on the Revised Uniform Deceptive Trade Practices Act, which does not authorize private plaintiffs to recover monetary damages—only injunctive relief. *Hall v. Walter*, 969 P.2d 224, 232 (Colo. 1998) (en banc). Prior to the 2022 amendment, multiple courts interpreting this provision held that, under the CCPA, class-wide monetary damages were barred altogether. *See, e.g., Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *5-7 (D. Colo. July 1, 2015); *Martinez v. Nash Finch Co.*, 2013 WL 1313899, at *3 (D. Colo. Mar. 29, 2013).

Dated: February 9, 2026

Respectfully submitted,

/s/ Michael S. Sommer

Michael S. Sommer (admitted *pro hac vice*)
J. Ariel Jeong (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI,
PROFESSIONAL CORPORATION
31 West 52nd Street, Fifth Floor
New York, New York 10019
Telephone: (212) 999-5800
Email: msommer@wsgr.com
         ajeong@wsgr.com

Matthew D. Gorman (BBO#569406)
WILSON SONSINI GOODRICH & ROSATI,
PROFESSIONAL CORPORATION
One Boston Place, 201 Washington St., Suite 200
Boston, Massachusetts 02109
Telephone: (212) 497-7786
Email: mgorman@wsgr.com

*Attorneys for Defendant Cognism Inc.*

-21-