**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHRISTOPHER GALLI, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>COGNISM INC.,<br><br>                 Defendant. | Case No. 1:25-cv-13153-BEM |

**<u>MEMORANDUM OF LAW IN OPPOSITION TO</u>**
**<u>DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

PAGE(S)

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.      PLAINTIFF HAS STATUTORY STANDING ................................................. 1

II.     PLAINTIFFF STATES A CLAIM UNDER THE CLP ...................................... 3

        A.      The Commercial Listing Provision Applies To Defendant ................... 3

        B.      Cognism Is A "Directory" ................................................................... 5

        C.      Defendant "Knowingly" Lists Coloradans' Cellular Numbers ............ 6

III.    DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL ........................ 7

        A.      The Commercial Listing Provision Does Not Restrict "Speech" ........ 7

        B.      The Commercial Listing Provision Is Not Content-Based .................. 8

        C.      Privacy Laws Are Not Subject To Strict Scrutiny, Even If
                Content-Based .................................................................................... 9

        D.      The CLP Regulates Commercial Speech, Thus Strict Scrutiny
                Does Not Apply ................................................................................ 11

        E.      Assuming *Arguendo* Strict Scrutiny Applies, The CLP Survives ....... 15

IV.     THE LISTING PROVISION IS NOT UNCONSTITUTIONALLY VAGUE .............. 19

V.      PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES ................. 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ainscough v. Owens*,
  90 P.3d 851 (Colo. 2004)........................................................................................2, 3

*Am. Comp. Ins. Co. v. McBride*,
  107 P.3d 973 (Colo. App. 2004)................................................................................2

*Atlas Biologicals, Inc. v. Kutrubes*,
  50 F.4th 1307 (10th Cir. 2022)..................................................................................2

*Atlas Data Priv. Corp. v. We Inform, LLC*,
  758 F. Supp. 3d 322 (D.N.J. 2024)....................................................................Passim

*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................................... 12, 13, 16

*Boelter v. Hearst Commc'ns, Inc.*,
  269 F. Supp. 3d 172 (S.D.N.Y. 2017) ..................................................................... 16

*Brooks v. Thomson Reuters Corp*,
  2021 WL 3621837 (N.D. Cal. Aug. 16, 20........................................................ 13, 14

*Burson v. Freeman*,
  504 U.S. 191 (1992) ................................................................................................ 11

*Camacho v. Control Grp. Media Co., LLC*,
  2022 WL 3093306 (S.D. Cal. July 18, 2022) ............................................................ 3

*Carey v. Brown*,
  447 U.S. 455 (1980) ................................................................................................ 15

*Carlson v. Ferris*,
  85 P.3d 504 (Colo. 2003)........................................................................................... 4

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
  447 U.S. 557 (1980) .......................................................................................... 11, 14

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
  596 U.S. 61, (2022) ............................................................................................... 8, 9

*Clark v. Community for Creative Non-Violence*,
  468 U.S. 288 (1984) .................................................................................................. 8

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
  472 U.S. 749 (1985) .................................................................................... 12, 13, 14

*Egan v. X-Mode Soc., Inc.*,
  2024 WL 2701967 (D. Mass. May 24, 2024)..................................................................... 3

*Fla. Star v. B.J.F.*,
  491 U.S. 524 (1989) ........................................................................................................ 11

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  227 F. Supp. 3d 1192 (D. Colo. 2017) ............................................................................ 2

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ................................................................................................. 15, 16

*Gallion v. Charter Commc'ns Inc.*,
  287 F. Supp. 3d 920 (C.D. Cal. 2018).......................................................................... 16

*Gargus v. Uplead, LLC*,
  2026 WL 121205 (C.D. Cal. Jan. 13, 2026)................................................................... 1

*Golec v. Boring*,
  2024 WL 5102044 (Colo. App. Dec. 12, 2024) ........................................................... 10

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
  527 U.S. 173 (1999) ...................................................................................................... 15

*Hall v. Walter*,
  969 P.2d 224 (Colo. 1998) .......................................................................................... 1, 2

*Hernandez-Gotay v. United States*,
  No. 19-2236, 2021 WL 128466 (1st Cir. Jan. 14, 2021)................................................ 7

*Holder v. Humanitarian L. Project*,
  561 U.S. 1 (2010) ......................................................................................................... 19

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ....................................................................................... 9

*Ivar v. Elk River Partners, LLC*,
  705 F. Supp. 2d 1220 (D. Colo. 2010) .......................................................................... 2

*Jackson v. WhitePages, Inc.*,
  2025 WL 2407201 (N.D.W.Va. Aug. 19, 2025) ............................................................ 9

*Joe Dickerson & Assocs., LLC v. Dittmar*,
  34 P.3d 995 (Colo. 2001).............................................................................................. 10

*Joseph v. IGN Ent., Inc.*,
  No. CV 24-11579-MJJ, 2025 WL 2597913 (D. Mass. July 10, 2025) ......................... 3

iii

*Katz v. Pershing, LLC*,
　672 F.3d 64 (1st Cir. 2012) ............................................................................................ 3

*Kellman v. Spokeo, Inc.*,
　599 F. Supp. 3d (N.D. Cal. 2022) ............................................................................ 3, 16

*Kolebuck-Utz v. Whitepages Inc.*,
　2021 WL 15752193 (W.D. Wash. Apr. 22, 2021 .................................................... 15, 16

*LaCourt v. Specific Media, Inc.*,
　2011 WL 1661532 (C.D. Cal. Apr. 28, 2011) .................................................................. 3

*McCoy v. Town of Pittsfield, NH*,
　59 F.4th 497 (1st Cir. 2023) .......................................................................................... 15

*McCraw v. City of Oklahoma City*,
　973 F.3d 1057 (2020) .................................................................................................... 17

*Nelson v. United States*,
　915 F.3d 1243 (10th Cir. 2019) ...................................................................................... 7

*People v. Martinez*
　534 P.3d 72 (Cal. 2023) ................................................................................................ 13

*Publius v. Boyer-Vine*,
　237 F. Supp. 3d 997 (E.D. Cal. 2017) ............................................................................ 9

*Reed v. Town of Gilbert, Ariz.*,
　576 U.S. 155 (2015) .................................................................................................... 8, 9

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
　547 US. 47 (2006) ........................................................................................................... 8

*Saunders v. Hearst Television, Inc.*,
　711 F. Supp. 3d 24 (D. Mass. 2024) ................................................................. 12, 13, 16

*Shekarchian v. Maxx Auto Recovery, Inc.*,
　487 P.3d 1026 (Colo. App. 2019 ................................................................................... 20

*Smith v. Exec. Custom Homes, Inc.*,
　230 P.3d 1186 (Colo. 2010) ............................................................................................ 4

*Tashjian v. CVS Pharmacy, Inc.*,
　2020 WL 1931859 (D. Mass. Mar. 13, 2020) ................................................................. 3

*Texas v. Johnson*,
　491 U.S. 397 (1989) ........................................................................................................ 8

*Tonnessen v. Denver Pub. Co.*,
  5 P.3d 959 (Colo. App. 2000)........................................................................... 10

*Trans Union, LLC* v. *FTC*,
  295 F.3d 42 (D.C. Cir. 2002) ........................................................................... 13

*Trans Union Corp. v.*, FTC,
  45 F.3d 809 (D.C. Cir. 2001)....................................................................... 13, 14

*Troster v. Pennsylvania State Dept. of Corrections*,
  65 F.3d 1086 (3d. Cir. 1995) .............................................................................. 8

*United States v. Rahimi*,
  602 U.S. 680 (2024) ........................................................................................... 7

*Victory Processing, LLC v. Fox.*,
  937 F.3d 1218 (9th Cir. 2019) ......................................................................... 15

*Vidal v. Elster*,
  602 U.S. 286 (2024) ......................................................................................... 10

*Williams-Yulee v. Fla. Bar*,
  575 U.S. 433 (2015) ......................................................................................... 17

*Wimberly v. Ettenberg*,
  570 P.2d 535 (1977) ........................................................................................... 2

**STATUTES**

18 U.S.C. § 2710............................................................................................... 16

47 U.S.C. § 227................................................................................................. 16

Colo. Rev. Stat. § 6-1-102 ................................................................................. 4

Colo. Rev. Stat. § 6-1-113 ............................................................................... 20

Colo. Rev. Stat. § 6-1-301 ............................................................................ 1, 16

Colo. Rev. Stat. § 6-1-304 ........................................................................Passim

Colo. Rev. Stat. § 6-1-305 ............................................................................... 20

Colo. Rev. Stat. § 6-1-903 ................................................................................. 5

v

**INTRODUCTION**

Colo. Rev. Stat. ("CRS") § 6-1-304(4)(a)(I) (the "Commercial Listing Provision" or "CLP", of the Prevention of Telemarketing Fraud Act ("PTFA")), was enacted to address privacy concerns and protect cell phone users from the misappropriation of their personal information. *See* CRS § 6-1-301 (legislative declaration). The CLP provides:

> (a) [A] person commits an unlawful telemarketing practice if the person knowingly:
>
> > (I) Lists a cellular telephone number in a directory for a commercial purpose unless the person whose number has been listed has given affirmative consent, through written, oral, or electronic means, to such listing[.]

Defendant Cognism Inc. ("Cognism" or "Defendant") has violated this proscription by listing the cell phone numbers of thousands of Colorado residents, including Plaintiff Christopher Galli ("Plaintiff"), in its for-sale and for-profit directory, without affirmative consent. *See* First Amended Complaint (ECF No. 20) ("FAC") ¶¶ 6, 10. Cognism's listing of cell phone numbers is done for a commercial purpose: Cognism is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers and subscribers. *Id.* ¶ 23.

Defendant has moved to dismiss Plaintiff's claims. Defendant's motion lacks merit, and the bulk of Defendant's arguments have already been rejected by the sole court to opine on the CLP. *See Gargus v. Uplead, LLC*, 2026 WL 121205 (C.D. Cal. Jan. 13, 2026) ("*Gargus*") (Court, J.). The Court should deny the motion in full.

**ARGUMENT**

**I. PLAINTIFF HAS STATUTORY STANDING**

Defendant argues that "Plaintiff fails to allege any injury in fact[,]" as required by the Colorado Consumer Protection Act. MTD at 6. Defendant is wrong. "[F]or a private cause of action under the CCPA, the plaintiff must meet the *Wimberly* standing requirements by demonstrating (a) injury in fact; (b) to a legally protected interest." *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)

1

(citing *Wimberly v. Ettenberg*, 570 P.2d 535 (1977)); *see also Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d 1220, 1241 (D. Colo. 2010). Here, Plaintiff states a claim under the CLP (*see infra* § II), so the second prong is satisfied. *See, e.g.*, *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004) (second prong asks "whether the plaintiff has a claim for relief under … a statute").

As to injury in fact, "[t]he *Wimberly* test provides a relatively broad definition of standing that has traditionally been relatively easy to satisfy." *Ivar*, 705 F. Supp. 2d at 1241 (cleaned up). "Colorado … does not require an injury that is both concrete and particularized, on the one hand and actual or imminent, not conjectural or hypothetical on the other." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1327 (10th Cir. 2022) (cleaned up). An "[i]njury in fact may be proved by showing that the action complained of has caused or has threatened to cause injury." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 976 (Colo. App. 2004) (citation omitted). Critically, "***[d]eprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact.***" *Ainscough*, 90 P.3d at 856 (emphasis added). Here, Plaintiff suffered the deprivation of his rights under the CLP; his cell phone number was listed by Cognism in its directory, for a commercial purpose, and without Plaintiff's consent. FAC ¶ 10. Thus, Plaintiff suffered an injury in fact, as he was deprived of his legal right to control who lists his cellular telephone number in a directory for commercial purposes. *Id.*

Defendant's citation to *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192 (D. Colo. 2017) is misplaced. *Friedman* examined "CCPA ***causation***[,]" (emphasis added) finding no "causal nexus" where a plaintiff failed to read a disclosure. *Id.* at 1204. Though Defendant conflates them, injury-in-fact and causation are separate elements of CCPA standing. *See Hall*, 969 P.2d at 234-235. Here, Plaintiff alleges a "causal link between [] [D]efendant's conduct and [] [P]laintiff's injury" (*id.* at 237) through the listing of Plaintiff's cell phone number. FAC ¶ 36.

2

Defendant contends Plaintiff "do[es] not demonstrate how [he] was deprived of the value of his personal data[.]" MTD at 6 (cleaned up). No such showing is required. *Ainscough*, 90 P.3d at 856. But "by selling [Plaintiff's] data without [] consent, [Defendant] unjustly enriched itself[.] … [This is] an injury[.]" *Egan v. X-Mode Soc., Inc.*, 2024 WL 2701967, at *3 (D. Mass. May 24, 2024) (collecting cases);[1] *see also Joseph v. IGN Ent., Inc.*, No. CV 24-11579-MJJ, 2025 WL 2597913, at *2 (D. Mass. July 10, 2025) (PII disclosure "establish[es] injury.") (citations omitted).

Defendant points to *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012). But any harm there was hypothetical, as there was only "a possibility, remote at best, [of a data breach]." *Id.* at 80. And in *LaCourt v. Specific Media, Inc.*, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011), "[p]laintiffs d[id] not explain how they were 'deprived' of the economic value of their personal information simply because [] unspecified personal information was purportedly collected by a third party." *Id.* at *5. Here, the harm has already occurred, and it was not mere data collection: Defendant list*ed* and commercially exploit*ed* Plaintiff's cell phone number. *See* FAC ¶¶ 10, 32, 36.

## II.  PLAINTIFFF STATES A CLAIM UNDER THE CLP

### A.      The Commercial Listing Provision Applies To Defendant

Defendant argues that the statute's prohibition against listing a cell phone number in a directory "for a commercial purpose" must be narrowly construed to "apply only to the purpose of consumer-targeted commercial telemarketing." MTD at 8. But being or aiding a commercial telemarketer is not a required element for a claim under the CLP. *Gargus*, at *6 ("Defendant also

---

[1] *See also Tashjian v. CVS Pharmacy, Inc.*, 2020 WL 1931859, at *9 (D. Mass. Mar. 13, 2020), *report and recommendation adopted*, 2020 WL 2048456 (D. Mass. Mar. 30, 2020) ("[Plaintiff] was injured by being denied the Defendants' ill-gotten profit. … Thus, [he] would be entitled to recover as damages any net profit Defendants obtained") (citation omitted); *Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *28 (S.D. Cal. July 18, 2022) ("[I]f a defendant uses a plaintiff's name and/or likeness to advertise, then it can reasonably be inferred that the name and/or likeness has some economic value, even if small. … [This can] establish[] common law injury[.]") (cleaned up); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d at 890 (N.D. Cal. 2022) ("loss of commercial use" is a form of injury).

maintains that it is not a telemarketer, so it cannot be liable under the PTFA… Defendant's interpretation of the statute is a wishful reading, but not the correct one.") (cleaned up). As *Gargus* notes, the CLP explicitly applies to any "person" who "lists a cellular telephone number in a directory …" in contrast to other provisions which apply solely to "commercial telephone seller[s]." *Id.* That difference in language implies a clear choice by the Colorado legislature to have the CLP sweep more broadly than other provisions in the PTFA. *Id.* ("Courts may not interpolate into a statute words that it does not contain, or extract a meaning which is not expressed by it.") (citation omitted). Defendant is a "person," and is thus subject to the CLP. *See* CRS § 6-1-102(6) (defining "person" in the CCPA, which includes the PTFA, to include a "corporation").

Defendant also improperly conflates "commercial purpose" (CRS § 6-1-304(4)(a)(I)) with "commercial telephone solicitation." MTD at 8. If the legislature had intended the CLP to only prohibit listings used for "commercial telephone solicitation," it would have used that exact term – just as it did in the very next subsection. *See* CRS § 6-1-304(4)(a)(II) (expressly conditioning liability on "mak[ing] a commercial telephone solicitation to a cellular telephone."). Again, this difference in language is indicative of a difference in legislative intent. *Carlson v. Ferris*, 85 P.3d 504, 509 (Colo. 2003). And "[w]here the statutory language is clear and unambiguous, we do not resort to legislative history or further rules of statutory construction." *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010) (citation omitted). Defendant's listing of Plaintiff's cellular number in its directory to advertise products and services and/or pursuant to Defendant's provision of its paid subscription services is undeniably a "commercial purpose." *See* FAC ¶ 10.

Next, Defendant contends that Plaintiff must allege the mobile numbers provided through Cognism's service are strictly "personal" (*e.g.*, as opposed to "business" or perhaps even mixed-use). MTD at 9. But the CLP contains no such requirement. CRS § 6-1-304(4)(a)(I). "Courts may

not interpolate into a statute words that it does not contain, or extract a meaning which is not expressed by it." *Gargus*, at \*6 (citation omitted).[2]

Finally, Defendant argues that in light of Colorado's No Call List Act (CRS § 6-1-903, *et seq.*), "[a] broad reading of the [CLP] would permit companies to provide telemarketing lists so long as they check against the no-call list, but would prohibit listing the same numbers elsewhere for any commercial purpose, even with no connection to telemarketing." MTD at 10. Defendant is engaging in mental gymnastics. The CLP neither refers to § 6-1-903 nor makes any exception for conduct complying with § 6-1-903. Thus, Defendant's assertion that the CLP "permit[s] companies to provide telemarketing lists so long as they check against the no-call list" is wrong. The CLP permits and prohibits what its plain text says, irrespective of the other statute.

### B.      Cognism Is A "Directory"

Defendant contends that it does not qualify as a "directory." MTD at 10-11. But this argument fails under the statute's plain language and was rejected by *Gargus*. In *Gargus*, the defendant similarly argued that its platform was a "dynamic, paid-user system designed for real-time data exploration," rather than a directory. *Gargus*, at \*5 (cleaned up). Judge Court rejected this argument, holding that "nothing in the statute requires a 'list' or 'directory' to be static." *Id.*

According to the definitions provided by both Defendant (from Merriam-Webster and the American Heritage Dictionary, *see* MTD at 11) and Plaintiff (from the Oxford Learner's Dictionary, *see* FAC ¶ 45) a directory can be, but does not need to be, listed alphabetically. And no matter if a directory is defined as a "classified list" or an "electronic resource containing lists

---

[2] Defendant's related "consumer marketing" construction argument (MTD at 8-9), which relies on the CCPA's title and the PTFA's legislative declaration, ignores both that Defendant has committed an "unlawful telemarketing practice" (CRS § 6-1-304(4)(a)), and that Plaintiff **has** alleged that Defendant's commercial listings of his and class members' cellular telephone numbers subjects them to increased risks of fraudulent and deceptive telemarketing practices. *See* FAC ¶¶ 28-31, 48. But again, neither allegations of "solicitation" nor "marketing" (MTD at 8) (cleaned up) are required elements for a claim under the CLP. *See supra*.

of information," Defendant's website is a directory. Plaintiff alleges that cognism.com users can view lists of "Coloradoans' cell phone numbers" and other information by "using filters such as location, industry, job title, and/or other parameters." FAC ¶¶ 18-19. By using these filters, "a cognism.com user is furnished a list of search results featuring individuals matching the selected parameters." *Id.* ¶ 20. From this list, user can click a button to be presented with "the searched individual's cell phone number(s)." *Id.* ¶¶ 20-21. That makes it a "directory."

Defendant next argues that it cannot be a directory because a user must take "affirmative steps" to query the database and "reveal" the number. MTD at 11. This argument is also illogical. The fact that a user must execute a search inquiry first does not change the nature of the data provided. Even a physical phone book requires a user to take "affirmative steps" of opening the book, navigating to the correct page, and looking for a number before it is "revealed." And again, "nothing in the statute requires a 'list' or 'directory' to be static." *Gargus*, at *5.

Finally, Defendant asks the Court to carve out an **unwritten** exemption for "B2B intelligence platforms." MTD at 11. But under binding Colorado law, "[i]t is fundamental . . . that a court may not 'create an addition to a statute that the plain language does not suggest or demand.'" *Gargus*, at *5 (citation omitted). "Accordingly, the [FAC] sufficiently alleges that Defendant listed Plaintiff's cell phone number in a directory for a commercial purpose." *Id.*

### C.    Defendant "Knowingly" Lists Coloradans' Cellular Numbers

Defendant contends Plaintiff "does not sufficiently allege that Cognism listed Plaintiff's phone number ***knowing*** that it was a Coloradan cell phone number." MTD at 11 (emphasis in original). This is wrong because the CLP proscribes "knowingly" listing a cellular telephone number – there is no Colorado residency knowledge requirement. *See* CRS § 6-1-304(4)(a)(I).

Regardless, Plaintiff has sufficiently alleged knowledge of residency. "Actual knowledge"

6

in Colorado means "one's awareness of the objective facts." *Nelson v. United States*, 915 F.3d 1243, 1249 (10th Cir. 2019). "Knowledge may be proved either by direct evidence of actual knowledge, or by circumstantial evidence." *Id.* at 1254 (citation omitted) (cleaned up). Read in light most favorable to Plaintiff, the FAC alleges that Defendant has actual knowledge of Plaintiff's location and that his number was cellular. Regarding location, Plaintiff alleges that Defendant lists people and their cell phone numbers "using filters such as location." FAC ¶ 19. The screenshot in ¶ 20 establishes that Cognism allows filtering by "State." Defendant also knows whether a listed number is cellular: Defendant's own website says "'Cognism … provides an 87% accurate phone-verified *cell phone database*.'" *Id.* ¶ 43 (emphasis added). Furthermore, Cognism specifically labels certain phone numbers as "Mobile" and offers a "Phone Type: … Mobile" filter. *See* FAC ¶ 21 (screenshot). These allegations suffice to demonstrate "knowledge."

## III.  DEFENDANT'S CONSTITUTIONAL CHALLENGES FAIL

A defendant who seeks to challenge the constitutionality of a statute can do so as a facial attack or an as-applied attack. Here, Defendant asserts facial challenges. *See* MTD at 12-18. "Any facial challenge fails because the statute has plainly legitimate sweep." *Hernandez-Gotay v. United States*, No. 19-2236, 2021 WL 128466, at *76 n.3 (1st Cir. Jan. 14, 2021). A facial attack is "the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). "[T]o prevail" against a facial attack, Plaintiff need only show that the CLP "is constitutional in some of its applications." *Id*.

### A.    The Commercial Listing Provision Does Not Restrict "Speech"

In advancing its numerous constitutional arguments, Defendant incorrectly assumes that its listing and sale of telephone numbers qualifies as "speech." *See* MTD at 13. "Speech" is

7

expressive activity "intended to be communicative" and that, "in context, would reasonably be understood … to be communicative." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984). "[T]o bring the First Amendment into play" the Court must find that "[a]n intent to convey a particularized message was present" and that "the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (cleaned up). Here, there is no "speech" at play because a cellular telephone number listed online and sold is not a message or thought. Such pure "fact[s]" are only "elements of speech[,]" *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 US. 47, 61-62 (2006), qualifying for First Amendment protection only if given "an expressive or communicative 'use'" in a complete speech act intended to express a message. *See Troster v. Pennsylvania State Dept. of Corrections*, 65 F.3d 1086, 1092 (3d. Cir. 1995) (citation omitted).

### B.      The Commercial Listing Provision Is Not Content-Based

Cognism contends the CLP "is content-based, because it prohibits the listing of only certain information—namely, cell phone numbers[.]" MTD at 13. But Defendant fails to cite a single case on point. In *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, the Supreme Court rejected Defendant's narrow "view that *any* examination of speech or expression inherently triggers heightened First Amendment concern." 596 U.S. 61, 73-74, (2022) (emphasis in original) (holding statute distinguishing between signs advertising on-site businesses versus off-site businesses was not content-based). As *City of Austin* clarified, content-based restrictions are found where a regulation is aimed at "particular viewpoints" and prohibition of "public discussion of an entire topic." *Id*. at 70 (discussing *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 169 (2015)). For example, in *Reed*, the Supreme Court deemed the subject regulation content-based because it singled out speech based on whether it "*conveys the message* of directing the public to church or some other

'qualifying event[,]'" and treated "the Church's signs inviting people to attend its worship services … differently from signs *conveying other types of ideas*." 576 U.S. at 164 (emphases added).

Defendant cites three cases that it purports are analogous. MTD at 13-14. None are instructive, as each analyzed a statute restricting either disclosures ***of a limited group*** of individuals' personal information or disclosures made ***by a limited group*** of speakers, rather than the public writ large. *See Jackson v. WhitePages, Inc.*, 2025 WL 2407201, at *1 (N.D.W.Va. Aug. 19, 2025) (regulating disclosures of "home addresses and phone numbers of protected individuals" – i.e. law enforcement officers); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1012-13 (E.D. Cal. 2017) (same for California officials);[3] *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1116, 1120-21 (9th Cir. 2020) (statute regulating "free, publicly available" profiles of celebrities—who qualify as "public figures," was content-based because it "appear[ed] to target a single entity: IMDb.com," and "it restricts only a single category of speakers[.]"). In other words, the restrictions at issue in these cases constrained ***whose*** information could be disclosed by ***whom***, thereby prohibiting "public discussion of an entire topic." *Reed*, 576 U.S. at 169. In contrast, like the regulation in *City of Austin*, the CLP is "agnostic" about both the speaker and the substantive content or message expressed. The CLP's ban on the commercial listing of cellular numbers (not a viewpoint) belonging to anybody (rather than, say, only law enforcement) in a directory by anybody is content-neutral because it does not discriminate by subject matter or speaker. "[A]bsent a content-based purpose or justification," a statute "is content neutral and does not warrant the application of strict scrutiny." *City of Austin*, 596 U.S. at 69. The CLP is thus content neutral.

### C.    Privacy Laws Are Not Subject To Strict Scrutiny, Even If Content-Based

Even if the CLP were content-based, Supreme Court precedent recognizes that when a

---

[3] *Publius* is also inapposite because it deemed the statute content-based on the ground that its application required examination of the disclosure – precisely the test rejected by *City of Austin*. *See Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1013 (E.D. Cal. 2017).

content-based restriction has a history of "longstanding coexistence … with the First Amendment," courts should not apply strict scrutiny. *Vidal v. Elster*, 602 U.S. 286, 288 (2024); *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 336 (D.N.J. 2024) ("*Atlas*") (holding Daniel's Law is a "privacy statute" and thus not subject to strict scrutiny).

The CLP creates a tort closely related to three traditional privacy torts which have long existed in harmony with the First Amendment. **First**, the CLP resembles the "public disclosure of private information" tort. *See Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 966 (Colo. App. 2000) (elements of claim in Colorado). The CLP targets listings that give publicity to facts generally of no legitimate concern to the public, providing a statutory remedy when the disclosure is done "for a commercial purpose." **Second**, the CLP, by extension, protects the right to control one's name, like the misappropriation-of-name-and-likeness tort. The economic value of the prohibited listings is directly related to the use of individuals' names, as it is impossible to sell someone's phone number in a directory without also using their name. The misappropriation-of-name-and-likeness tort "has been recognized throughout most of the United States[.]" *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1001 (Colo. 2001). **Third**, the CLP protects the interests underlying the "intrusion upon seclusion" tort, which "encompasses intrusions into a person's private concerns based upon a reasonable expectation of privacy in that area." *Golec v. Boring*, 2024 WL 5102044, at *8 (Colo. App. Dec. 12, 2024). Restricting the commercial listing of cell phone numbers shields individuals from third-party intrusions into their private lives. *See* FAC ¶¶ 2-4, 8, 24-31.

The "longstanding coexistence" between privacy torts and the First Amendment forecloses the application of strict scrutiny. *See Atlas*, 758 F Supp. 3d at 335 (referring to Supreme Court's long tradition of rejecting strict scrutiny for privacy torts). "[T]he sensitivity and significance of the interests presented in clashes between [the] First Amendment and privacy rights counsel

relying on limited principles that sweep no more broadly than the appropriate context of the instant case." *Fla. Star v. B.J.F.*, 491 U.S. 524, 533 (1989). When "the exercise of free speech rights conflicts with another fundamental right," reasonable compromises "survive[] strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992). This defeats Defendant's facial challenge.

### D.      The CLP Regulates Commercial Speech, Thus Strict Scrutiny Does Not Apply

Strict scrutiny does not apply to restrictions on commercial speech even if content-based. Here, the CLP was plainly drafted to ***exclusively*** apply to commercial speech, which, as the Supreme Court has held, is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *see also* CRS § 6-1-304(4)(a) (requiring that a "listing" be "for a commercial purpose" as an essential element of any claim). Thus, strict scrutiny does not apply.

Defendant does not meaningfully attempt to argue its conduct is not commercial speech – it merely partially recites the standard.[4] As in *Gargus*, which analyzed identical conduct by another B2B lead service, Defendant's failure to raise a genuine dispute on this issue is dispositive:

> Based on the allegations in the Complaint, the Court understands Defendant to be engaging in commercial speech. Here, Defendant does not explain its speech as having anything but an economic motivation, nor do any of the facts in the Complaint suggest an additional motivation.

*Gargus*, at \*6 (citation omitted). The same is true here. Just like Upload in *Gargus*, "Defendant provides an online business-to-business or B2B Lead Generation Directory Service[, a] platform[] … that facilitate[s] identifying and acquiring potential business-to-business leads. This kind of service compiles and organizes … contact details, business categories, industry, size, location, and other relevant data. B2B Lead Generation Directories … [are] tailored to B2B marketing and sales

---

[4] Defendant relegates discussion of whether the CLP regulates commercial speech to a footnote, arguing that despite the CLP's reference to "commercial purpose," publication of cell phone numbers is not "commercial speech" because it's not speech that "does no more than propose a commercial transaction." MTD at 14 n.9 (cleaned up). Defendant's threadbare argument oversimplifies the standard for determining whether speech is commercial. *See infra.*

needs." FAC ¶ 16 (cleaned up). Defendant makes clear that it is selling Coloradans' cell phone numbers and other personal information specifically for *marketing* purposes, such as to "give telemarketing teams everything they need to hit their targets" or to "make sales reps' lives easier … with [] extensive … mobile numbers." *Id.* (quoting Defendant's website). That is *quintessential* commercial speech: "expression related solely to the economic interests of the speaker and its audience." *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 32 (D. Mass. 2024) (Stearns, J.) (holding that for-profit "disclosure of PII to third parties is commercial speech.").

The analysis in *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) (*"Hearst I"*) is particularly on point. There, the statute "restrict[ed] the sellers of certain products from disclosing the identity of individuals who purchase those products." *Id.* at 445. Judge Torres held that "businesses' increasing ability to profit from the collection and sale of data supports the conclusion that disclosing consumer information is—primarily, if not entirely—an economic act." *Id.* (citation omitted). Although it was "conceivable that Defendant's disclosures may be used for non-economic purposes[,]" Judge Torres still held "such potential does not dilute the speech's commercial character." *Id.* at 445-446 (citations omitted). Relying on *Hearst I*'s reasoning, Judge Stearns reached the same conclusion. *Saunders*, 711 F. Supp. 3d at 32 (citing *Hearst I*).

Courts have consistently adhered to this reasoning since the Supreme Court's decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* ("*D&B*"), which "recognized that not all speech is of equal First Amendment importance" and noted that "[i]t is speech on matters of public concern that is at the heart of the First Amendment's protection." 472 U.S. 749, 758–59 (1985) (cleaned up). Evaluating the "content, form, and context" of a credit report, the Supreme Court concluded speech on matters of purely private concern warranted reduced constitutional protection. *Id.* at 761-63. Specifically, the credit report "was speech solely in the individual interest

of the speaker and its specific business audience"; special protection for such credit reporting was not necessary to ensure that "debate on public issues [will] be uninhibited, robust, and wide-open"; and, like similarly profit-driven commercial speech, credit reporting was "unlikely to be deterred by incidental state regulation." *Id.* at 762 (cleaned up).[5]

Like those cases, the allegations here establish that Defendant's listing of Plaintiff's cellular telephone number is a purely economic act. *See, e.g.*, FAC ¶ 23 ("Defendant is literally selling Plaintiff's and Class Members' cell phone numbers and accompanying information to its customers."). Plaintiff does not challenge, and the PTFA does not regulate, listing of cellular telephone numbers for any noncommercial purpose. As is clear from the pleadings, Defendant does not merely publish cell phone numbers. ***Defendant lists cellular telephone numbers behind a subscription paywall and sells access for profit***. *See* FAC ¶¶ 16-23. Thus, it cannot be debated that Defendant's listing of cell phone numbers is done for a commercial purpose under the PTFA. *See id.* ¶ 23. Under such circumstances, Defendant's speech is commercial. *E.g. Saunders*, 711 F. Supp. 3d 24, 33 ("[T]he court can conceive of no legitimate non-commercial First Amendment interest of Hearst that its exploitation of plaintiffs' PII serves.").

Further, "[e]ven if the disclosures" at issue "[did] not strictly satisfy the definition of commercial speech, [such] speech … is subject to 'many of the same concerns that argue in favor of reduced constitutional protection' for commercial speech." *Saunders*, 711 F. Supp. 3d at 33 n.8 (quoting *Dun & Bradstreet*, 472 U.S. at 761-762 & n.8). "[L]ike the credit report at issue in *Dun*

---

[5] Courts across the country have since applied *D&B*'s reasoning (and intermediate scrutiny) to disclosures of a wide variety of data. *See, e.g.*, *Saunders*, 711 F. Supp. 3d at 33 n.8; *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *14-16 (N.D. Cal. Aug. 16, 2021); *Hearst I*, 192 F. Supp. 3d at 446–47; *Trans Union Corp. v. FTC*, 245 F.3d 809, 818 (D.C. Cir. 2001); *Trans Union LLC v. FTC*, 295 F.3d 42, 52–53 (D.C. Cir. 2002) ("Trans Union II"); *Individual Reference Servs. Grp., Inc. v. FTC*, 145 F. Supp. 2d 6, 40–41 (D.D.C. 2001), *aff'd sub nom. Trans Union II*, 295 F.3d 42 (D.C. Cir. 2002); *People v. Martinez*, 534 P.3d 72, 83 (Cal. 2023).

& *Bradstreet*, [listings] with Plaintiff['s] personal information concern[ ] no public issue because [they are] speech solely in the individual interest of the speaker [i.e. Defendant] and its specific business audience [i.e. Defendant's subscribers]." *Brooks v. Thomson Reuters*, 2021 WL 3621837, at \*15 (cleaned up). "Also, that [Defendant] only shares Plaintiff['s] personal information with its [Defendant's] subscribers who specifically pay for it, and not with the general public, cuts heavily against concluding that [Defendant]'s conduct is of public concern." *Id.* "If anything, as the District of Columbia Circuit correctly pointed out in *Trans Union Corp. v. FTC*, the speech at issue here is less of the public's concern than the credit report in *Dun*[] *& Bradstreet* because it involves the personal information of private individuals, not incorporated businesses like the respondent in *Dun & Bradstreet*." *Id.* (cleaned up). "And the speech here is 'solely motivated by the desire for profit,' which 'is a force less likely to be deterred than others,' further counseling in favor of the application of intermediate scrutiny." *Saunders*, 711 F. Supp. 3d at 33 n.8 (quoting *D&B*, 472 U.S. at 762). Thus, intermediate scrutiny applies to the CLP.

The CLP survives intermediate scrutiny because (1) the government has a "substantial" interest in restricting the speech; (2) the regulation "directly advances the governmental interest" involved; and (3) the regulation is not "more excessive than is necessary to serve that interest." *See Cent. Hudson Gas & Elec. Corp.*, 447 U.S. at 566; *see also infra* (discussing strict scrutiny).[6] Further, unlike strict scrutiny, *Central Hudson* does not require the government to "employ the least restrictive means conceivable," rather the restriction must be a reasonable fit—"not necessarily the single best disposition but one whose scope is in proportion to the interest served."

---

[6] Multistate consortiums of attorneys general have submitted *amicus* briefing in similar cases arguing: (1) the PTFA regulates commercial speech, (2) the nonconsensual publication and sale of consumers' private data is commercial speech, (3) the First Amendment does not protect the nonconsensual publication of cellular numbers, and (4) the PTFA satisfies intermediate scrutiny. *See* Exs. 1-4 to Plaintiff's request for judicial notice. Plaintiff incorporates these arguments by reference here.

14

*Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999). The CLP does exactly that. *Infra* § III.E. (discussing tailoring). Cognism addresses intermediate scrutiny only in a footnote, referencing strict scrutiny tailoring arguments. MTD at 14 n.9. Should the Court find Defendant's speech is commercial, that is dispositive.[7] And even if applicable to the intermediate scrutiny analysis, Defendant's critiques of the CLP's tailoring are meritless.[8] *See infra*.

### E.       Assuming *Arguendo* Strict Scrutiny Applies, The CLP Survives

To satisfy strict scrutiny, a restriction on speech is justified only if the government "demonstrate[s] that the restriction advances a compelling interest and is narrowly tailored to achieve that interest[.]" *McCoy v. Town of Pittsfield, NH*, 59 F.4th 497, 506 (1st Cir. 2023) (cleaned up). The CLP survives this test if it is applied.

**The CLP Serves A Compelling State Interest.** Colorado has a compelling interest in regulating entities like Defendant that encroach on individuals' cell phone privacy. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Carey v. Brown*, 447 U.S. 455, 471 (1980); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (same). And courts have "never held that the interest in privacy ends at one's home." *Victory Processing, LLC v. Fox.* 937 F.3d 1218, 1227 (9th Cir. 2019). Indeed, the state's "interest in protecting privacy applies with equal force to cellular devices." *Id.* (cleaned up).

Colorado's legislature "f[ound], determine[d], and declare[d]" that such "matter[s] ***vitally affect[] the public interest***; and, therefore, that the general welfare of the public and the protection

---

[7] *See*, *e.g.*, *Gargus*, 2026 WL 121205, at *6 (First Amendment argument against CLP failed where "Defendant offers no response to Plaintiff's identification of its activity as commercial speech."); *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219 at *3 (W.D. Wash. Apr. 22, 2021) (finding intermediate scrutiny argument waived) (cleaned up).

[8] While Plaintiff's arguments, *infra*, that the CLP survives strict scrutiny (a much more exacting standard) are applicable to the intermediate scrutiny analysis, the same cannot be said of the inverse. That is basic logic – satisfaction of a higher standard also satisfies the lower standard, but failure to reach a higher standard is inconclusive as to whether the lower standard is satisfied.

15

of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones." CRS § 6-1-301 (emphasis added); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 197 (S.D.N.Y. 2017) ("*Hearst II*") (the "stated interest in protecting consumer privacy from nonconsensual disclosure to third parties … is a substantial government interest.").

Case law has affirmed this state interest in privacy protection in numerous analogous contexts. *See, e.g.*, *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (collecting cases upholding Telephone Consumer Protection Act, 47 U.S.C. § 227); *Kellman*, 599 F. Supp. 3d at 900 (upholding state right to publicity statutes); *Kolebuck-Utz*, 2021 WL 1575219 at *3 (same); *Saunders*, 711 F. Supp. 3d at 33 (upholding federal Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA")); *Hearst I*, 192 F. Supp. 3d at 448 (upholding VPPA state analogue).

**The CLP Is Narrowly Tailored.** "A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485 (citation omitted). The CLP does exactly that: it bars only listings of cellular telephone numbers that are done "knowingly," "in a directory," "for a commercial purpose," and "without affirmative consent." CRS § 6-1-304(4)(a)(I). These restricting essential elements narrowly tailor the CLP.

Defendant argues that the CLP is overinclusive because it restricts the conduct of "people" rather than "commercial telephone seller[s]," as the PTFA's other provisions do. MTD at 15. But the CLP's reach is limited by its plain text to defendants who profiteer off the uncontested listing of cell phone numbers. That is the proper target for the implicated state interest.

Defendant next argues that the CLP is overbroad because it "penalizes listing information already in the public domain." MTD at 16. But "this type of information is generally more difficult to extract from public records than information found on the Internet." *Atlas*, 758 F. Supp. 3d at 338. "The Supreme Court has emphasized that the right of privacy in compiled or computerized

16

information does not evaporate simply because the information may be found in other places." *Id.* There is thus "a vast difference between public records that might be found after a diligent search of courthouse files, county archives, and local police stations throughout the country and a computerized summary located in a single clearinghouse of information." *Id.* (quotation omitted). Defendant's listings make Plaintiff's and class members' cell phone numbers available in a packaged, easily searchable, and highly accessible form.

**The CLP Is Not Underinclusive.** Defendant raises several arguments regarding underinclusivity. However, the Supreme Court has long held that "the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (cleaned up). The Supreme Court has "upheld laws—even under strict scrutiny—that conceivably could have restricted even greater amounts of speech in service of their stated interests." *Id.* (collecting cites).

Defendant argues that the CLP is underinclusive because it does not prevent people from listing a phone number outside a "directory" and a "cell phone number is no less available to potential fraudsters if it is posted alone[.]" MTD at 16. But the first place a telemarketer or fraudster would go looking for cell phone numbers would be in a large commercial directory like Defendant's website. By limiting the unconsented widespread public dissemination of cell phone numbers, Colorado has cut off the easiest way to get that information. This is a far cry from *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1077 (2020), where the court found "no discrepancy" between permissible and prohibited behaviors. Defendant's argument ignores the statutory purpose of the CLP is protecting the privacy of cellular phones against commercial misuse and fraud, not barring people from voluntarily sharing their cell phone numbers.

Defendant next argues that the CLP is underinclusive by exempting non-commercial

17

directories. MTD at 16. But this is evidence that the law is narrowly tailored. Individuals willingly provide their phone numbers to the groups listed by Defendant. When somebody receives a call from their school or church, that is precisely the type of call they can "expect [] to be important." FAC ¶ 2. And these entities are not profiteering from Colorado residents' data by listing them in for-profit directories without consent, as Defendant does.

Defendant also argues that the government "engages in exactly the disclosure [the CLP] prohibits for others" through voter records and the Colorado Supreme Court's attorney directory. MTD at 17. But the Colorado government is not disclosing these phone numbers, cellular or otherwise, for any "commercial purpose."[9] And Defendant, unlike the government, discloses cellular numbers in a way that greatly expands access to them. *See Atlas*, 758 F. Supp. 3d at 338.

**The CLP Is Narrowly Tailored to Meet a Specific Interest.** Defendant frames the FAC as asserting a "generalized interest in privacy" and maintains that the CLP is poorly tailored to that end. MTD at 18 (cleaned up). Contrary to Defendant's assertion, the CLP protects a highly specific interest: preventing the commercial exploitation of private cellular telephone information. *See* FAC ¶¶ 4, 27. This harm is distinct from, and often a prerequisite to, the subsequent telemarketing fraud that Defendant describes. *See* MTD at 18.

Defendant argues that "[p]enalizing disclosure of an entire category of speech cannot be the least restrictive means of preventing a small number of wrongdoers from 'misappropriating' that speech after it has been disclosed." MTD at 18. Cognism points to the Colorado Privacy Act as an alternative solution. *Id.* But Defendant ignores that data brokers are pernicious and pervasive.[10] So too are potential "wrongdoers" who seek to misappropriate personal information from them. And as recognized by *Atlas*, there is tremendous difficulty in "notify[ing these] entities,

---

[9] The Secretary of State also only releases phone numbers "if provided by the voter[.]" https://www.sos.state.co.us/pubs/elections/FAQs/VoterRegistrationData.html.
[10] *See* https://cppa.ca.gov/data_broker_registry/registry.csv (California data broker registry).

large and small, to refrain from disclosing [] home addresses and unlisted phone numbers[.]" *Atlas*, 758 F. Supp. 3d at 335. It would be near-impossible to dig up obscure data brokers one has never even heard of, send countless notice-and-takedown requests, and navigate their labyrinthine processes to ensure compliance. The CLP properly addresses this and meets strict scrutiny.

## IV.    THE LISTING PROVISION IS NOT UNCONSTITUTIONALLY VAGUE

Defendant argues that the CLP is impermissibly vague because, in Defendant's view, it "leaves regulated parties guessing at the meaning of key terms[.]'" MTD at 18. This is wrong.

A statute only "fails to comport with due process" under the vagueness doctrine if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010). Defendant takes a dim view of what constitutes a "person of ordinary intelligence." Defendant's expansive interpretation of the vagueness doctrine would require that every single noun and verb in a statute be explicitly defined.

The "list," "directory," and "commercial purpose" elements of the CLP are thus not unconstitutionally vague. Rather, the plain statutory language makes clear that Defendant has violated it. *See Gargus*, at *5 ("Defendant attempts to create statutory ambiguity where there is none… All that the plain language requires is the listing of a cell phone number in a directory for a commercial purpose—exactly what the Complaint alleges here."). And even if Defendant could find vagueness in the law, it does not (and could not) question that the CLP bars the unconsented "list[ing of] a cellular telephone number in a directory for a commercial purpose[.]" CRS § 6-1-304(4). Because Defendant did exactly that, its vagueness challenge fails. *See Holder*, 561 U.S. at 20 (a party "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."); *see also supra* § II.

## V.    PLAINTIFF CAN RECOVER CLASS-WIDE STATUTORY DAMAGES

Defendant argues that Plaintiff's prayer for "class-wide statutory damages" should be dismissed on the basis that such damages are not recoverable under the PTFA. MTD at 19-20. Defendant is wrong. The statutory language is clear: The CLP "allow[s] Plaintiff to seek statutory damages as part of his class claims." *Gargus*, at \*6.

That is because the "penalties" section of the PTFA expressly guarantees the remedies therein "*[i]n addition* to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113." CRS § 6-1-305 (emphasis added). Thus, even if the putative class could not recover statutory damages under CRS § 6-1-113, they can still recover them under CRS § 6-1-305. *See Gargus*, at \*6 ("Plaintiff identifies that Colo. Rev. Stat. § 6-1- 305(1) provides penalties "[i]n addition to the remedies available under sections 6-1-110, 6-1-112, and 6-1-113.").

Additionally, CRS § 6-1-113(2.9) sets a <u>floor</u> for what "a successful plaintiff may recover," not a ceiling limiting all potential remedies. *See, e.g.*, *Shekarchian v. Maxx Auto Recovery, Inc.*, 487 P.3d 1026, 1031 n.2 (Colo. App. 2019) ("The CCPA does not supplant or preempt other causes of action or remedies available to a plaintiff under the common law or other statutes."). Here, the statutory damages guaranteed by the PTFA are non-discretionary. *See Gargus*, at \*6. The Court should thus decline to strike the statutory damages claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied in its entirety. In the alternative, Plaintiff requests leave to amend to address any deficiencies the Court may identify.

20

Dated: March 9, 2026                    Respectfully submitted,

                                       **BIRNBAUM & GODKIN, LLP**

                                       By: */s/ James E. Kruzer*
                                              James E. Kruzer

                                       David S. Godkin (BBO#196530)
                                       James E. Kruzer (BBO#670827)
                                       1 Marina Park Drive, Suite 1410
                                       Boston, MA 02210
                                       Telephone: (617) 307-6100
                                       Email:  godkin@birnbaumgodkin.com
                                               kruzer@birnbaumgodkin.com

                                       **BURSOR & FISHER, P.A.**
                                       Joseph I. Marchese*
                                       1330 Avenue of the Americas, 32nd Floor
                                       New York, NY 10019
                                       Telephone: (646) 837-7150
                                       Facsimile: (212) 989-9163
                                       Email: jmarchese@bursor.com

                                       **BURSOR & FISHER, P.A.**
                                       Matthew A. Girardi*
                                       50 Main Street, Suite 475
                                       White Plains, NY 10106
                                       Telephone: (914) 874-0708
                                       Facsimile: (914) 206-3656
                                       Email: mgirardi@bursor.com

                                       *Attorneys for Plaintiff*

                                       ***Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 9, 2026, to all counsel of record through the Court's CM/ECF system.

                                       By: */s/ James E. Kruzer*
                                              James E. Kruzer

21